UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIANNA JACKSON,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 2:25-CV-239-CCB-SJF

## OPINION AND ORDER

Before the Court is Plaintiff Brianna Jackson's appeal of the Social Security

Administration's decision on September 24, 2025, on behalf of minor B.D. (ECF 1). In

that decision, an Administrative Law Judge ("ALJ") of the Social Security

Administration denied Ms. Jackson's claim for supplemental security income based on

the disability of B.D. Now Ms. Jackson seeks remand of that decision. Ms. Jackson's

request is denied and the ALJ's opinion is affirmed for the reasons below.

## ANALYSIS

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's

final decision in federal court. This Court must affirm the ALJ's decision if it is

supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v.*

*Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere

scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means

"evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. But that review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the Court that he "considered the important evidence" and allow the Court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

2

### B. Procedural Background

Ms. Jackson filed an application for supplemental security income on behalf of B.D. on November 14, 2022. That application was denied initially on April 3, 2023, and upon reconsideration on June 27, 2023. Ms. Jackson sought a hearing, and on March 7, 2024, the Social Security ALJ held an online video hearing. The ALJ then issued an unfavorable decision on April 26, 2024. Ms. Jackson appealed that decision to the Appeals Council, which denied her appeal on March 25, 2025. She now appeals to this Court.

### C. The ALJ's Decision

A person under 18 seeking supplemental security income due to disability must show that he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). If a claimant's application is denied initially and upon reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

Child disability claims are subjected to an evaluation process consisting of three questions: (1) whether the child is engaging in substantial gainful activity, (2) whether the child has a severe impairment, and (3) whether the child's impairment(s) meet, medically equal, or functionally equal the listings. 20 C.F.R. § 416.924. When determining functional equivalency, 20 C.F.R. § 416.926a(b)(1) requires ALJs to consider how a child functions in six domains: (1) acquiring or using information, (2) attending

3

and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. To functionally equal the severity of the listings, a child must have "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that "interfere(s) seriously" with the ability to independently initiate, sustain, or complete activities, while an "extreme" limitation "interferes very seriously" with the same abilities. 20 C.F.R. § 416.926a.

Here, at step one, the ALJ found that B.D. had not engaged in substantial gainful activity during the relevant period. (R. 12). At step two, the ALJ found that B.D. had the severe impairments of attention deficit hyperactivity disorder, oppositional defiance disorder, and disruptive mood dysregulation disorder. (*Id.*) At step three, the ALJ determined that B.D. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12–13). The ALJ then considered whether B.D.'s impairments functionally equaled the severity of the listed impairments. (R. 14–17). She determined that B.D. had less-than-marked limitations in attending and completing tasks as well as interacting and relating with others, but had no limitations in the other four functional categories. (R. 14).

### D. Issues on Appeal

Ms. Jackson requests remand to the Agency on two grounds. First, she seeks remand because the ALJ erred by failing to build a logical bridge from the evidence to

her conclusions. Second, she seeks remand because the ALJ erred by rejecting evidence from B.D.'s daycare because it did not contain clinical examination findings.

### 1. The Logical Bridge

Ms. Jackson first argues that the ALJ improperly assessed the severity of B.D.'s hyperactivity. She takes particular issue with one statement in the ALJ's opinion: "However, while frequently noted as hyperactive, [B.D.'s] objective clinical findings fail to objectively document significant behavioral issues or cognitive difficulties." (R. 15). This statement, Ms. Jackson suggests, improperly conflates the functional category of attending and completing tasks with the category of acquiring and using information and the category of interacting and relating with others. She explains that hyperactivity is assessed within the realm of attending and completing tasks, while cognitive issues are assessed within the realm of acquiring and using information and behavioral issues are assessed within the realm of interacting and relating to others. For this reason, Ms. Jackson contends that the ALJ improperly reduced B.D.'s functional limitations in one category because of his lack of limitation in two others.

This argument fails. Ms. Jackson takes the position that that ALJ reduced the severity of B.D.'s limitation in attending and completing tasks because the ALJ noted his lack of limitation in the other two categories considered. This theory is not supported by the ALJ's opinion. To the contrary, the ALJ's reasoning is easy to trace: evidence of B.D.'s hyperactivity led to the conclusion that he has a less-than-marked limitation in his ability to attend and complete tasks. Ms. Jackson cites no evidence that the ALJ would have concluded that B.D.'s hyperactivity was more severely limiting but

for his "otherwise normal" exam results, and the record does not support such a conclusion.

Ms. Jackson goes on to argue that the ALJ improperly concluded that B.D. had no significant changes in his status throughout 2023 and 2024. (R. 15). The ALJ noted that B.D.'s mental status was found to be "generally normal" in July 2023, and that "[o]ngoing examinations in 2023 and 2024 documented no significant change to mood/affect, thought process/orientation, motor activity/speech, and behavior/functioning." (*Id.*) Ms. Jackson submits that examinations by medical professionals David Greer and Sheila Withers during that time suggest that B.D. was suffering marked limitations stemming from his hyperactivity. She argues that the ALJ improperly disregarded this evidence when concluding that B.D.'s "generally normal" mental status did not change significantly over the course of 2023 and 2024.

As Ms. Jackson acknowledges, the ALJ does determine that B.D. is hyperactive. But while "clinical records note findings consistent with ongoing hyperactivity," the ALJ concluded that those findings were "unsupportive as to necessity of greater limitations than those assessed herein." (R. 15). Ms. Jackson disagrees. She contends that the examination records of Dr. Greer and Ms. Withers support marked limitations in the domain of attending and completing tasks and the domain of interacting and relating with others. But disagreement is not error, and this Court will not substitute its judgment for that of the ALJ. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (stating that the court will not "reweigh the evidence, resolve debatable evidentiary conflicts, [or] determine credibility"). This argument also fails.

Finally, Ms. Jackson argues that the ALJ inappropriately applied or failed to apply several pieces of record evidence. First, she argues that the ALJ cited to B.D. "being well groomed, speaking clearly, and not having physical, auditory or visual difficulties at his neuropsychological evaluation as if these things refuted B.D.'s being restless and hyperactive." (ECF 12 at 11). This argument does not hold water. At the conclusion of the part of the opinion Ms. Jackson references, the ALJ explicitly acknowledged that B.D. was noted to be "restless and hyperactive." (R. 15). Second, she argues that the ALJ failed to address that B.D. refused to interact with other children during an examination, instead stating that B.D. "responded to social greeting and conversations." (R. 16). Though framed as a contradiction, this is easily explained by the record: on the occasion cited, B.D. "responded to adult greetings and engaged in conversation with novel adults," but refused to interact with other children. (R. 460–61). The ALJ's failure to explicitly note that B.D. failed to interact with other children does not justify remand. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain or reasoning."). Finally, Ms. Jackson notes that the ALJ did not address B.D.'s social emotional standard score. Again, the ALJ need not note each piece of evidence or articulate each conclusion she drew from it to avoid remand. This argument fails as a whole.

### 2. Rejection of Daycare Evidence

Next, Ms. Jackson argues that remand is required because the ALJ improperly rejected B.D.'s daycare records because they lacked detailed clinical examination findings.

Contained within the record are reports in the form of text messages from B.D.'s daycare that describe B.D.'s disruptive and antisocial behavior. In her opinion, the ALJ stated that she took into consideration the daycare records and B.D.'s dismissal from multiple daycare centers. (R. 16). "However," she noted, those "submissions do not contain the detailed clinical examination findings, mental status examination findings, or neuropsychological examination findings documented" elsewhere in the record. (R. 16). "Therefore," the ALJ concluded that there was "insufficient evidence of record to support necessity of greater domain difficulties than those assessed herein." (R. 17).

This, Ms. Jackson contends, is error. She argues that the ALJ effectively rejected the daycare records because they were not objective medical evidence and were not reviewed by the medical professionals who provided opinions elsewhere in the record. In support, she cites Social Security Rulings that emphasize how information from non-medical sources is "very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning." SSR 09-2p; *see also* SSR 16-3p (noting that the Social Security Administration "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

This authority shows that it would be improper for an ALJ to wholly dismiss non-medical evidence merely because it was non-medical. But there is no reason to believe the ALJ did that here. She does not, as Ms. Jackson implies, disregard the daycare reports because they did not "include medical examinations like mental status evaluations." (ECF 12 at 13). Instead, she states that she considered the daycare records, and B.D.'s dismissal from daycare. She also states that those records did not contain reports of clinical examinations. And she concludes that the records are insufficient to justify greater limitations than those already assessed. Nowhere in her opinion does she dismiss the records out of hand because they did not contain clinical reports.

Still, Ms. Jackson asks the Court to infer such a dismissal because "[i]t is unclear why the ALJ would describe what isn't in this evidence unless that description was related to why she did not weigh the evidence in favor of B.D.'s disability." (ECF 15 at 7). But there is a difference between refusing to consider evidence because it lacks objective medical data and taking into account a lack of objective medical data as part of considering that evidence. It seems clear here that the ALJ did the latter. And, contrary to Ms. Jackson's argument, the ALJ had no obligation to spell out which specific elements of the record evidence failed to "support necessity of greater domain difficulties." (R. 17). "Given the extraordinary demands already on social security ALJs," the Seventh Circuit has emphasized that ALJs "are subject to only the most minimal of articulation requirements," and "need not provide a complete written evaluation of every piece of testimony and evidence." *Warnell v. O'Malley*, 97 F.4th at

1053 (cleaned up in original) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). Here, the ALJ met that minimal requirement.

## CONCLUSION

For the reasons above, the Commissioner's Decision is **AFFIRMED**.

SO ORDERED on July 16, 2026.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT